UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

DAVID BLEVINS,

                          Plaintiff,                    DECISION AND ORDER

vs.

                                            24-CV-6080-MAV

TOWN OF BRIGHTON,

                          Defendant.

---

      Plaintiff David Blevins is a deaf individual whose primary mode of communication is American Sign Language ("ASL"). On February 12, 2022, Blevins was subject to a traffic stop by an officer of Defendant Town of Brighton's police department, and subsequently arrested and taken to the Town's police station. Blevins was not given access to a live or remote ASL interpreter either during the traffic stop or while at the police station. In February 2024, he filed the instant action against the Town of Brighton alleging violations of Title II of the Americans with Disabilities Act ("ADA"), the Rehabilitation Act of 1973, and the New York State Human Rights Law ("NYSHRL").

      The matter is presently before the Court on the Town's motion to dismiss for failure to state a claim. ECF No. 9. For the reasons stated below, the Town's motion is granted in part, and denied in part.

## BACKGROUND

      For the purposes of ruling on the Town's motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court accepts all factual allegations in

Blevins' pleadings as true, and draws all reasonable inferences in favor of Blevins. *See Trs. of Upstate New York Eng'rs Pension Fund v. Ivy Asset Mgmt.*, 843 F.3d 561, 566 (2d Cir. 2016).

In February 2022, Blevins – a resident of Tennessee – was attending college in Rochester, New York. ECF No. 1 at ¶¶ 11, 31. He "is a profoundly deaf individual who primarily communicates in . . . [ASL], and he is substantially limited in the major life activities of hearing and speaking within the meaning of federal and state anti-discrimination laws." *Id.*

On the night of February 12, 2022, Blevins was driving through the Town while working as an Uber driver, when he sped up to move away from a vehicle that was tailgating him. *Id.* at ¶¶ 21–22. Soon after speeding up, Town police initiated a traffic stop and Blevins pulled over into a gas station. *Id.* at 23–24. Officer Bianco of the Town's police department approached Blevins' vehicle and began speaking. *Id.* at ¶ 25. Blevins' attempt to read Officer Bianco's lips was unsuccessful, so he gestured "a few times" that he was deaf and needed a pen and pad to communicate. *Id.* at ¶ 26. He did not receive a pen and pad, but attempted to communicate with Officer Bianco that he had a firearm inside of his car. *Id.* at ¶ 28. Officer Bianco eventually understood Plaintiff, retrieved the firearm from Blevins' glove compartment, and called for backup. *Id.* at ¶¶ 29–30.

Officer Sahr arrived at the gas station and began questioning Blevins, but communication was minimal, consisting of lipreading and limited spoken English since neither officer "was versed in sign language" and no ASL interpreter was

present or contacted. *Id.* at ¶¶ 30, 32, 35, 36. Officers Bianco and Sahr ultimately placed Blevins under arrest, handcuffed him, and transported him to "the jail." *Id.* at ¶¶ 33, 41. Blevins "was confused and worried about the situation and requested an interpreter to facilitate communication"; he did not understand why he was being arrested or what he was being charged with. *Id.* at ¶¶ 34, 39.

At the jail, Blevins was not provided with access to a live or remote ASL interpreter, only with paper to communicate. *Id.* at ¶¶ 42–43. It is not clear from the pleadings if he was expected to read the officers' lips at the station while he communicated via pen and paper, or whether the pen and paper communication was two-way. In any event, Blevins was held in a jail cell for a time, and police maintained possession of his firearm after his release. *Id.* at ¶ 44. Even then, Blevins did not "fully understand[ ]" what was communicated from the time of his initial stop through his release. *Id.* at ¶ 45.

On March 31, 2022, Blevins filed an "internal complaint" about his experience. *Id.* at ¶ 47. On September 29, 2022, he received a letter from Town Police Captain Jose Caraballo, which carbon-copied the Police Chief and Deputy Chief. *Id.* at ¶ 48. The letter informed Blevins that it did not violate Town policies or procedures not to provide a qualified ASL interpreter during his arrest and subsequent processing at the Town police station. *Id.* at ¶ 49.

Blevins initiated the instant action on February 7, 2024 alleging violations of Title II of the ADA, the Rehabilitation Act, and the NYSHRL. ECF No. 1. On March 22, 2024, the Town filed the motion to dismiss for failure to state a claim that is

presently before the Court. ECF No. 9. Blevins filed his opposition to the motion on April 10, 2024, and the Town filed its reply on April 25. ECF Nos. 11, 16. In February 2025, the matter was transferred to the undersigned. ECF No. 18.

## LEGAL STANDARD

The purpose of a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) "is to test . . . the formal sufficiency of the plaintiff's statement of a claim for relief without resolving a contest regarding its substantive merits." *Global Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 155 (2d Cir. 2006) (emphasis omitted). An action must be dismissed under Rule 12(b)(6) "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief . . . ." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007). To survive a motion to dismiss under Rule 12(b)(6), on the other hand, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. Where a plaintiff's factual allegations are "merely consistent with" a defendant's liability, those allegations "'stop[] short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557). Moreover, "[c]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to defeat a motion to dismiss." *Kirch v. Liberty Media Corp.*, 449 F.3d 388, 398 (2d Cir. 2006) (citation and internal

quotation marks omitted). "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

## DISCUSSION

The Town seeks dismissal of Blevins' claims on multiple grounds, including that Blevins fails to state a claim under the relevant statutes, that he is not entitled to compensatory damages because he has not sufficiently alleged deliberate indifference by the Town or any injuries beyond emotional distress, and that he does not have standing to seek the injunctive relief he requests. ECF No. 9-1.

### I. The Legal Sufficiency of Blevins' Claims

#### A. Title II, the Rehabilitation Act, and the NYSHRL

Title II of the ADA provides, in pertinent part, that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Section 504 of the Rehabilitation Act "prohibits programs and activities receiving federal financial assistance from excluding, denying benefits to, or discriminating against 'otherwise qualified'" individuals with a disability. 29 U.S.C. § 794(a). "[A]lthough there are subtle differences between these disability acts, the standards adopted by Title II of the ADA for state and local government services are generally the same as those required under [S]ection 504 of federally assisted programs and activities." *Henrietta D. v. Bloomberg*, 331 F.3d 261, 272 (2d Cir. 2003) (internal citation omitted). Thus,

because none of the differences between the two statutes are pertinent to the present case, the Court considers the ADA and Rehabilitation Act claims under the same legal standard. *Disabled in Action v. Bd. of Elections*, 752 F.3d 189, 196 (2d Cir. 2014) (quoting *McElwee v. Cnty. of Orange*, 700 F.3d 635, 640 (2d Cir. 2012)).

With respect to Blevins' claim under the NYSHRL, the Court observes that there are important distinctions between the state and federal statutes in their definitions of disability and their applications to particular types of claims. *See, e.g., Green v. Gen. Motors*, No. 20-CV-1797-LJV-HKS, 2023 WL 3541265, at *8 (W.D.N.Y. May 18, 2023) (discussing amendments to NYSHRL in 2019); *Stephens v. Shuttle Assocs., L.L.C.*, 547 F. Supp. 2d 269, 279 n. 3 (S.D.N.Y. 2008) (noting distinctions in definitions). Nevertheless, courts frequently analyze disability claims under the NYSHRL as "co-extensive" with federal claims, and use the same legal standards. *See, e.g., Williams v. City of New York*, 121 F. Supp. 3d 354, 364 n. 10 (S.D.N.Y. 2015) (citing *Loeffler v. Staten Island Univ. Hosp.*, 582 F.3d 268, 277–78 (2d Cir. 2009)). *See also I.M. by L.M. v. City of New York*, 178 A.D.3d 126, 135 (N.Y. App. Div. 2019) (analyzing claims under Title II of the ADA, Rehabilitation Act, and NYSHRL using "the same legal standards"). Yet whether or not the standards are precisely the same, courts have found that if a plaintiff can satisfy his burden under the federal claims, he will also satisfy his burden under the NYSHRL. *See Montes v. Albany Cnty.*, No. 1:24-CV-985 (AMN/DJS), 2024 WL 4562543, at *8 (N.D.N.Y. Oct. 24, 2024) (citing *Williams*, 121 F. Supp. 3d at 364 n. 10).

To state a *prima facie* claim under the federal statutes at issue in this case, a plaintiff must demonstrate that (1) he is a qualified individual with a disability; (2) the defendant is subject to one of the Acts; and (3) he was denied the opportunity to participate in or benefit from the defendant's services, programs, or activities, or was otherwise discriminated against by the defendant because of his disability. *Davis v. Shah*, 821 F.3d 231, 259 (2d Cir. 2016) (citation omitted). A plaintiff alleging disability discrimination can satisfy the third element by basing his discrimination claim on one of three theories of liability: (1) disparate treatment, (2) disparate impact, or (3) failure to make a reasonable accommodation. *Fulton v. Goord*, 591 F.3d 37, 43 (2d Cir. 2009).

### B. Blevins' Discrimination Claims

The first two elements of Blevins' discrimination claims are not at issue in this case. The Town accepts as true Blevins' allegations that he is a qualified individual with a disability, and that the Town is subject to the ADA and Rehabilitation Act. ECF No. 9-1 at 21. However, the Town argues that Plaintiff has not satisfied the third element of demonstrating that he was denied the opportunity of participating in or benefitting from a service provided by the Town because of his disability. *Id.* In response, Blevins contends that he has satisfied the third element because he has plausibly alleged discrimination under theories of failure to accommodate, disparate treatment, and a failure to train. ECF No. 11.

After a careful review of the parties' papers and relevant statutes, regulations, and caselaw, the Court finds that Blevins has plausibly alleged his disability

7

discrimination claims under a failure to accommodate theory, and that the Town's alleged "failure to train" serves to support that theory, but that Blevins has not adequately alleged disparate treatment.

### i. Failure to Accommodate

Blevins has adequately pled his discrimination claims on a "failure to accommodate" theory. A plaintiff adequately pleads a Title II ADA claim or Rehabilitation Act claim under a failure to accommodate theory when he has alleged that a disability makes it difficult for him to access services to which he is legally entitled, and the entity providing the services has failed to make "reasonable accommodation" to assure the plaintiff has "meaningful access" to the service. *Henrietta D. v. Bloomberg*, 331 F.3d 261, 273 (2d Cir. 2003) (discussing *Alexander v. Choate*, 469 U.S. 287, 300–01 (1985)). Notably, the implementing regulations for Title II of the ADA specifically provide that covered entities "shall take appropriate steps to ensure that communications with applicants, participants, members of the public, and companions with disabilities are as effective as communications with others." 28 C.F.R. § 35.160(a)(1).

Here, it is undisputed that Blevins is considered disabled under the relevant statutes due to his deafness, that the Town services in question – i.e., law enforcement acting in an investigative and custodial capacity – are subject to the requirements of the statutes, and that Blevins is legally entitled to those services. *See Williams*, 121 F. Supp. 3d at 368. It is also undisputed that the Town did not provide an ASL interpreter either at the scene of Blevins' arrest, or after he was taken

8

to the police station. Because Blevins has plausibly alleged that the communication between the officers and him was ineffective, that the ineffective communication interfered with his meaningful access to law enforcement's service, and that he requested an ASL interpreter as an accommodation, the only question regarding the legal sufficiency of his claim under the "failure to accommodate" theory is the reasonableness of the accommodation. *See, e.g.,* ECF No. 1 at ¶¶ 34, 40.

Yet the reasonableness of an accommodation is a "fact-specific" question, requiring the Court to consider – among other things – whether the accommodation would impose an "undue hardship" on the Town, or make "fundamental" or "substantial" modifications to its services. *Dean v. Univ. at Buffalo Sch. of Med. & Biomedical Scis.*, 804 F.3d 178, 186 (2d Cir. 2015) (discussing, *inter alia, Powell v. Nat'l Bd. of Med. Exam'rs*, 364 F.3d 79, 85 (2d Cir. 2004)). In other words, the reasonableness must be assessed in light of the totality of the circumstances. *Williams*, 121 F. Supp. 3d at 365; *see also Nieves v. Plaza Rehab. & Nursing Ctr.*, No. 1:20-CV-01191 (JLR) (OTW), 2023 WL 4763945, at *6 (S.D.N.Y. July 26, 2023) (collecting cases regarding the factors to consider "when a plaintiff's disability involves hearing loss"). Given its fact-intensive nature, the Court is not in a position to make a definitive reasonableness determination at this early stage of the case. Blevins has alleged the existence of a facially reasonable and plausible accommodation, thus his claims of discrimination based on a failure to accommodate theory may proceed to discovery. *Matchett v. Brighton Police Dept.*, No. 24-CV-6001-FPG, 2024 WL 4607728, at *4 (W.D.N.Y. 2024) ("To the extent the Town disputes the

alleged insufficiencies of the accommodations it did provide, that is a fact-sensitive issue better addressed after discovery.").

In this regard, the Court notes that Blevins' so-called "failure to train" theory is not one of the three theories that the Second Circuit has recognized as a proper basis for disability discrimination claims under Title II of the ADA or the Rehabilitation Act. *See Davis*, 821 F.3d at 260; *Fulton*, 591 F.3d at 43. While a defendant's failure to train its employees may support a theory of disparate treatment, disparate impact, or failure to accommodate, the Second Circuit has not recognized it a separate theory of liability under the relevant statutes. *See, e.g., Reyes v. Town of Thomaston*, No. 3:18-CV-831 (JBA), 2020 WL 5849529, at *6 (D. Conn. 2020) (finding that the defendant's failure to properly train its officers in dealing with mentally ill individuals could have had a bearing on whether the victim's mental illness was reasonably accommodated).

Here, Blevins' allegations regarding the Town's failure to train its police officers supports his failure to accommodate theory. *See Felix v. City of New York*, 344 F. Supp. 3d 644, 663 (S.D.N.Y. 2018) (noting that courts typically treat discrimination claims against police "under either the wrongful arrest or failure to reasonably accommodate umbrellas" and that "only the latter is relevant" to the plaintiff's claims under the ADA and Rehabilitation Act based on the defendant's failure to properly train its officers). Therefore, though Blevins may not proceed on a separate failure to train theory, discovery regarding the Town's alleged failure to train is nevertheless relevant to his claims.

*ii. Disparate Treatment*

By contrast, the Court finds that Blevins has not sufficiently pleaded a discrimination claim under a "disparate treatment" theory. Blevins' recitation of the elements required to plead discrimination under a disparate treatment theory is inaccurate. In his brief, Blevins states that to sufficiently plead disparate treatment he must plausibly allege: 1) that he is a qualified individual with a disability, 2) that he was excluded from participation in the public entity's services, and 3) that such exclusion or discrimination was due to his disability. ECF No. 11 at 7 (citing *Tardif v. City of New York*, 991 F.3d 394, 404 (2d Cir. 2020)). But these elements are merely the general elements for stating a disability discrimination claim under the relevant federal statutes. *See Noel v. New York City Taxi & Limousine Comm'n*, 687 F.3d 63, 68 (2d Cir. 2012) (reciting the elements of a general discrimination claim under Title II of the ADA). They do not address the particular theory of disparate treatment.

A plaintiff alleges disparate treatment when he alleges the defendant intentionally treats some people less favorably than others on the basis of their disability (i.e., intentional discrimination). *Brooklyn Ctr. for Psychotherapy, Inc. v. Philadelphia Indem. Ins. Co.*, 955 F.3d 305, 311 (2d Cir. 2020) (citing *Hazen Paper Co. v. Biggins*, 507 U.S. 604, 609 (1993)). Thus, the theory of disparate treatment is distinguished from the other two theories of discrimination by its requirement to show both that the disabled individual(s) received different treatment, and that the difference in treatment was intentional. *Brooklyn Ctr. for Psychotherapy, Inc.*, 955 F.3d at 311. Courts routinely treat the term "disparate treatment" as signifying that

the plaintiff is "'treated less favorably than a similarly situated [individual] outside of his protected group.'" *Tillman v. Verizon New York, Inc.*, 118 F. Supp. 3d 515, 536 (E.D.N.Y. 2015) (quoting *Graham v. Long Island R.R.*, 230 F.3d 34, 39 (2d Cir. 2000)); *see also* DISPARATE TREATMENT, *Black's Law Dictionary* (12th ed. 2024) ("The practice . . . of intentionally dealing with persons differently because of their . . . disability.").

In the present case, Blevins' allegations do not suggest that he was treated differently than similarly situated individuals on the basis of his disability. Instead, his claims are rooted precisely in the allegation that he was treated the same as individuals who can hear, while his deafness required that he be treated differently – i.e., receive an interpreter – to enjoy full access to the services to which he was entitled. Put another way, Blevins' claims are rooted in the Town's *failure to accommodate* his disability. *See* ECF No. 11 at 13 ("Blevins's only concern is the proper provision of ASL interpreters to facilitate effective communication and ensure equal access to BPD's programs, services, and benefits for deaf and hard-of-hearing people."). Accordingly, Blevins' claims may not proceed on a theory of disparate treatment under any statute. *See Matchett*, 2024 WL 4607728, at *3 n. 4 (W.D.N.Y. 2024) (identifying similar reasons to explain why the plaintiff could not proceed on a disparate treatment theory).

*iv. Summary*

In sum, the Court finds that Blevins has plausibly pleaded a disability claim under a failure to accommodate theory, and that his allegations regarding the Town's

12

"failure to train" its officers support that theory. Accordingly, Blevins' "failure to accommodate" claims under Title II of the ADA, the Rehabilitation, and the NYSHRL may proceed. However, Blevins has not adequately alleged disparate treatment, and his claims under that theory may not proceed.

## II. Blevins' Prayer for Relief (Available Remedies)

In the present suit, Blevins seeks declaratory and injunctive relief, as well as recovery of costs and damages. In seeking dismissal of the suit, the Town maintains that Blevins' complaint has not plausibly alleged entitlement to any compensatory damages, and that his request for injunctive relief must be dismissed because he has failed to adequately allege a likelihood of future harm. *Id.* at 23–24.

### A. Compensatory Damages

In order to recover compensatory damages under Title II of the ADA and the Rehabilitation Act, the plaintiff must show that the discrimination was intentional. *Vassenelli v. State Univ. of New York*, No. 517CV00082MADATB, 2018 WL 1406629, at *3 (N.D.N.Y. Mar. 19, 2018) (citing *Frank v. Sachem Sch. Dist.*, 84 F. Supp. 3d 172, 186–87 (E.D.N.Y. 2015)). As the Second Circuit has stated, the standard for intentional violations is not animus or ill will, but "'deliberate indifference to the strong likelihood [of] a violation . . . .'" *Loeffler*, 582 F.3d at 275 (quoting *Bartlett v. N.Y. State Bd. of Law Exam'rs*, 156 F.3d 321, 331 (2d Cir. 1998), *vacated on other grounds and remanded*, 527 U.S. 1031 (1999)); s*ee also Lalonde*, 662 F. Supp. 3d 289, 328–29 (N.D.N.Y. 2023) (outlining the history of the deliberate indifference standard in the disability context). Deliberate indifference must be a "deliberate choice[,]

13

rather than negligence or bureaucratic inaction." *Loeffler*, 582 F.3d at 276 (citing *Reynolds v. Giuliani*, 506 F.3d 183, 193 (2d Cir. 2007)).

Here, Blevins has plausibly alleged deliberate indifference. It is well-settled that vicarious liability principles apply under the ADA, and that municipalities may be held vicariously liable for violations of Title II of the ADA and of the Rehabilitation Act committed by their agents. *Lalonde*, 662 F. Supp. 3d at 329 (citing *Morales v. City of New York*, No. 13-CV-7667, 2016 WL 4718189, at *7, 2016 U.S. Dist. LEXIS 121471, at *22 (S.D.N.Y. Sept. 7, 2016); *Bowen v. Rubin*, 385 F. Supp. 2d 168, 180 (E.D.N.Y. 2005). Blevins has alleged that he could not communicate effectively with Officer Bianco and Officer Sahr, that he communicated his need for an interpreter, and that the failure to provide him with an interpreter caused "unnecessary confusion and fear." ECF No. 1 at ¶¶ 25–40. He further alleged that during his transport to jail, and while at the jail, he was only provided with paper that limited him to "surface-level communications" and an "ineffective and incomplete" information exchange that denied him "full[ ] understanding" of what was happening. *Id.* at ¶¶ 41–46.

Moreover, Blevins also alleged that he notified the Town of its allegedly discriminatory conduct and received the response from a police captain, with copy to the police chief and deputy police chief, that the failure to provide him with an interpreter did not violate Town policies or procedures. *Id.* at ¶¶ 47–48. Thus, a reasonable juror could potentially infer that the Town was aware of its police department's inability to effectively communicate with deaf people, and chose not to remedy the issue. At this early stage of the case, these allegations are sufficient to

14

allege deliberate indifference to "the strong likelihood that a violation of federally protected rights will result from the implementation of the [challenged] policy . . . [or] custom." *Lalonde*, 662 F. Supp. 3d at 329 (citation omitted). *See also Fera v. City of Albany*, 568 F. Supp. 2d 248, 259 (N.D.N.Y. 2008) ("Defendant's knowledge of Plaintiff's condition is a triable issue of fact. Even if Defendant had such knowledge, there remains a triable issue of fact concerning whether its actions, through its police officers, constitute deliberate indifference to Plaintiff's rights under the ADA.").

However, the Court agrees with the Town that Blevins cannot recover compensatory damages for emotional distress under the ADA or the Rehabilitation Act. The Second Circuit has recently made clear that "[b]ecause recovery for emotional distress damages is unavailable under the Rehabilitation Act's cause of action, we now hold that such recovery is likewise unavailable under Title II of the ADA, which explicitly borrows the 'remedies, procedures, and rights' of the Rehabilitation Act." *Doherty v. Bice*, 101 F.4th 169, 175 (2d Cir. 2024), *cert. denied*, 145 S. Ct. 381 (2024).

Still, as Blevins points out in his brief, the Town did not address the availability of emotional distress damages under the NYSHRL. Courts have upheld a plaintiff's recovery for mental anguish under the NYSHRL "for actual and proven injury. . . [that can be] corroborated by reference to the circumstances of the alleged misconduct." *See Ruhling v. Newsday, Inc.*, No. CV 04-2430ARL, 2008 WL 2065811, at *6 (E.D.N.Y. May 13, 2008) (upholding award under the NYSHRL where plaintiff demonstrated that she "suffered emotional distress as a direct result of disability

15

discrimination"); *Gatti v. Cmty. Action Agency of Greene Cnty., Inc.*, 263 F. Supp. 2d 496, 514 (N.D.N.Y. 2003), *aff'd sub nom. Gatti v. Cmty. Action of Greene Cnty., Inc.*, 86 F. App'x 478 (2d Cir. 2004) (affirming emotional distress damages where "[t]he jury could have reasonably found that the physical consequences were proximately caused by the Defendants' conduct.").

Based on the foregoing, and on Blevins' allegations that he is entitled to "other forms of compensatory damages beyond emotional-distress damages" (ECF No. 1 at ¶ 95–100), the Court declines to find at this stage that Blevins is not entitled to any compensatory damages. Accordingly, Blevins may not pursue emotional distress damages under the Rehabilitation Act or the ADA, but he may pursue such damages under the NYSHRL for any "actual and proven injury" that he can show were related to the circumstances of alleged misconduct. Further, he may pursue "other forms of compensatory damages" as alleged.

The Court notes that even if Blevins is ultimately unable to demonstrate by proof that he is entitled to "other forms of compensatory damages" under the ADA and Rehabilitation Act, he may nevertheless be entitled to nominal damages in the event the Town is found liable on one or more of his claims. The Court agrees with Judge Geraci's observation in a recent case that "nominal damages are a generally accepted remedy in contract actions," and "generally accepted contract remedies" are "appropriate to redress" violations of the ADA and Rehabilitation Act." *Matchett*, 2024 WL 4607728, at *6 (citing *Fantasia v. Montefiore New Rochelle*, No. 19-CV-11054, 2022 WL 20540940, at *5 (S.D.N.Y. June 16, 2022)); *see also Matagrano v.*

*New York State Dep't of Corr. & Cmty. Supervision,* No. 9:19-CV-763 (BKS/DJS), 2023 WL 5932943, at *9 (N.D.N.Y. Sept. 12, 2023) (declining to dismiss the claim for nominal damages where "the parties have not addressed what showing [p]laintiff is required to make to recover nominal damages").

### B. Injunctive Relief

In his complaint, Blevins also asks the Court to order a multitude of correctives to the Town's alleged present policies and practices. ECF No. 1 at p. 16–18. The Town argues that Blevins lacks standing to pursue the injunctive relief he requests because he has failed to adequately allege a likelihood of future harm. *See* ECF No. 9-1 at 23–24. Blevins maintains that he has adequately alleged a likelihood of future harm because (1) he "has a personal stake here as a resident of geographically proximate Rochester, New York," and (2) Police Captain Caraballo's letter explaining that the Town's failure to provide an interpreter was not a violation of Town policy shows that the Town's alleged violation of the ADA and Rehabilitation Act will cause additional harm in the future. ECF No. 11 at 21. The Court agrees with the Town that Blevins lacks standing to seek the proposed injunctive relief.

In order to survive a motion to dismiss on the issue of standing to pursue injunctive relief, a plaintiff must have alleged: (1) an injury in fact, (2) a causal connection between his injury and the conduct complained of, and (3) his injury will be redressed by a favorable judicial decision. *See Costin v. Glen Falls Hosp.*, 103 F.4th 946, 952 (2d Cir. 2024) (citation omitted). A plaintiff adequately pleads the injury requirement under the ADA "where (1) the plaintiff alleged past injury under the

ADA; (2) it was reasonable to infer that the discriminatory treatment would continue; and (3) it was reasonable to infer . . . that plaintiff intended to return to the subject location." *Bernstein v. City of New York*, 621 F. App'x 56, 57 (2d Cir. 2015) (citing *Kreisler v. Second Ave. Diner Corp.*, 731 F.3d 184, 187–88 (2d Cir. 2013); *Camarillo v. Carrols Corp.*, 518 F.3d 153, 158 (2d Cir. 2008)). That is, the plaintiff must show that there is a sufficient "likelihood that he will again be wronged in a similar way." *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983).

Here, Blevins' complaint fails to demonstrate a sufficient likelihood that he will be wronged again by the Town in a similar way. Because Blevins does not allege that he has had any encounters with the Town police other than the one incident he describes in his complaint, or even that he is frequently in a position in which such encounters may occur, to find that he is likely to suffer future harm from the Town's "failure to provide sign language interpreters upon arrest or incarceration would require conjecture and speculation, which is not permissible under established precedent." *Williams v. City of New York*, 34 F. Supp. 3d 292, 297 (S.D.N.Y. 2014); *see also Morales v. City of New York*, No. 13-CV-7667 (RJS), 2016 WL 4718189, at *6 (S.D.N.Y. Sept. 7, 2016). Further, he does not allege permanent residence in the Town or nearby, but only that he is a Tennessee resident attending college in Rochester, New York.[1] ECF No. 1 at ¶¶ 11, 31. *Compare Rapa v. City of New York*, No. 15-CV-

---

[1] A plaintiff's standing is evaluated at the time the complaint is filed. *Lugo v. City of Troy, New York*, No. 1:19-CV-00067 (MAD/TWD), 2024 WL 4950105, at *6 (N.D.N.Y. Dec. 3, 2024) (citing *Robidoux v. Celani*, 987 F.2d 931, 938 (2d Cir. 1993)). Accordingly, the Court is not here suggesting that perhaps Blevins' collegiate career has ended, negating the likelihood of future harm. Rather, the Court is merely pointing out that Plaintiff's complaint alleges only a temporary connection with the area.

1916 JMF, 2015 WL 5671987, at *2 (S.D.N.Y. Sept. 25, 2015) (finding no standing where "[t]he only allegations of future injury contained in the Complaint indicate that Plaintiff, 'as a resident of neighboring Bronxville, expects to have future encounters [with] the New York City Police Department, whether by choice or necessity, as he frequently visits the City.'"); *with Matchett*, 2024 WL 4607728, at *6 ("[I]t is reasonable to conclude that Plaintiffs intend to make use of the Town's police services in the future. They live within the jurisdiction of the Town's police . . . so any emergency situation in which Plaintiffs are involved in the future will likely involve the [Town].").

Blevins' request for injunctive relief is therefore denied. *See Ortiz v. Westchester Med. Ctr. Health Care Corp.*, No. 15 CIV. 5432 (NSR), 2016 WL 6901314, at *9 (S.D.N.Y. Nov. 18, 2016); *see also Wilson v. Phoenix House*, 42 Misc. 3d 677, 706 (N.Y. Sup. Ct. 2013) ("[NYSHRL] does not create any right to injunctive relief in private civil actions filed in a court . . . ."). For the sake of clarity, the Court notes that this finding applies only to Blevins' request for injunctive relief, and not to his request for declaratory relief regarding the alleged injury that occurred. As Judge Geraci recently stated: "[w]hile some courts have exercised their discretion to dismiss requests for declaratory relief where 'other claims in the suit will resolve the same issues,' the Court perceives no advantage in addressing the propriety of declaratory relief at this early stage." *Matchett*, 2024 WL 4607728, at *7 (quoting *City of Perry, Iowa v. Procter & Gamble Co.*, 188 F. Supp. 3d 276, 286 (S.D.N.Y. 2016)).

Accordingly, while the Court finds that Blevins lacks standing to pursue

injunctive relief, it declines to dismiss Blevins' request for declaratory relief.

## CONCLUSION

For the foregoing reasons, it is hereby,

ORDERED that the Town's motion to dismiss Blevins' complaint is granted in part and denied in part. Specifically, the Town's motion is GRANTED with respect to Blevins' discrimination claims based upon a theory of disparate treatment, his request for injunctive relief, and any emotional distress damages he sought to pursue under the ADA and the Rehabilitation Act. However, the Town's motion is DENIED with respect to Blevins' discrimination claims based upon a failure to accommodate theory, and his request for compensatory damages, including for mental anguish under the NYSHRL. Consequently, it is further

ORDERED that the Town file an answer with respect to the remaining claims in Blevins' complaint no later than thirty (30) days from the date of this order.

SO ORDERED.

Dated: July 9, 2025
Rochester, New York

ENTER:

*/s/ Meredith Vacca*
HON. MEREDITH A. VACCA
United States District Judge